**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**June 21, 2004**

**Charles R. Fulbruge III**
**Clerk**

REVISED JUNE 22, 2004
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**No. 03-50213**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**ELIZABETH HERNANDEZ-SARMIENTO,**

**Defendant-Appellant.**

---

**Appeal from the United States District Court**
**for the Western District of Texas**
**USDC No. P-02-CR-125-ALL**

---

Before JOLLY, DAVIS and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

The court has carefully considered the appeal filed by Hernandez challenging the denial of her motion to suppress evidence. Although Appellant's position is well argued, the determination whether Game Warden Cervantez had reasonable suspicion to stop her car because of its unusual night-time activity on Highway 349 is in this case heavily dependent on the district court's credibility determination. Both the district court and the magistrate judge found Warden Cervantez's explanation

---

[*]    Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of the basis for his suspicion credible, notwithstanding Appellant's counter-arguments. The court's factfindings are entitled to deference under the clearly erroneous standard. Further, his articulated facts, taken together, satisfied a standard of reasonable suspicion that Hernandez's vehicle might be engaged in illegal hunting. <u>See</u> <u>United States of America v. Arvizu</u>, 534 U.S. 266 (2002).

Accordingly, the motion to suppress was correctly denied, and the conviction is **AFFIRMED**.

E. GRADY JOLLY, Circuit Judge, dissenting:

I respectfully dissent.

Warden Cervantez testified that he suspected Hernandez-Sarmiento's involvement in illegal hunting activities, namely hunting at night, hunting from a vehicle, and hunting by using artificial light, because: 1) the road was "notorious" for road hunting, 2) the vehicle had no apparent reason to be on that road, and 3) the van passed his location very slowly, proceeded south out of view and, after a few minutes returned past his location traveling "a little bit faster." Warden Cervantez testified that this conduct conforms with the typical pattern of illegal road hunters who, according to Warden Cervantez,

> Go down that one way. They are hunting, using the lights of the vehicle so they might be going down slow. Once they find their target, whatever it is ... they killed it, put it in the vehicle and get out of there as fast as they can in case somebody heard a shot or somebody saw them.

The facts in this case, as articulated by Warden Cervantez for justifying his suspicion of criminal activity, do not meet the Fourth Amendment standard, when compared to the criminal profile he described above.

That standard is that "[a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in <u>criminal</u> activity." <u>United States v. Cortez</u>, 449 U.S. 411, 417 (1981) (emphasis added). "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of <u>criminal</u> activity." <u>Id</u>. at 417-18 (emphasis added). In making this assessment we must look to the "totality of the circumstances" and are, thus, precluded from looking at individual facts "in isolation from each other." <u>United States v. Arvizu</u>, 534 U.S. 266, 274 (2002). Finally, we may consider only facts that were known to the officer at the time of the stop. <u>United States v. Morales</u>, 191 F.3d 602, 604 (5th Cir. 1999).

It seems apparent from the record, and particularly his testimony, that Warden Cervantez's suspicions that Hernandez-Sarmiento was involved in illegal road hunting do not meet the Fourth Amendment standard for reasonable suspicion. First, Warden Cervantez heard no gunshot and did not observe Hernandez-Sarmiento use her headlights in any unusual way. Second, Warden Cervantez's observation that Hernandez-Sarmiento traveled south very slowly and then returned north past his location traveling only "a little bit faster" is inconsistent with his earlier description of the profile of the illegal hunter: that a hunter "get[s] out of there as fast as they can." Third, with respect to his testimony that he was suspicious because Highway 349 is notorious for illegal hunting,

4

the record positively shows that no citations have been issued on Highway 349 in the last five years for the illegal hunting activities suspected here (hunting at night, hunting from a vehicle, and hunting by using artificial light). Still further, Warden Cervantez's justification for his suspicion in the absence of citations (the presence of animal carcasses near the highway) does not support his articulated modus operandi for poachers -- kill an animal, put it in the vehicle and then quickly flee the area.

In the light of our discussion above, the totality of the circumstances is now that Hernandez-Sarmiento drove her van down a lonely road and returned a few minutes later going in the opposite direction. Although this may have raised some suspicion in the mind of a reasonable officer, it does not arouse suspicion of <u>criminal</u> activity in the totality of this case. If this were the case the officer could stop any driver on that road for simply turning around and heading in the opposite direction. Such an unwarranted stop by the police is supported by nothing more than a "hunch", <u>see</u> <u>Terry v. Ohio</u>, 392 U.S. 1, 27 (1968), and in my opinion is barred by the Fourth Amendment.

For these reasons, I respectfully dissent.